Maureen **BARNETT**, Appellant,

v.

**TARRANT COUNTY HUMANE SOCIETY et al., Appellees.**

No. 6176.

Court of Civil Appeals of Texas, Waco.

Nov. 20, 1980.

Rehearing Denied Dec. 18, 1980.

Robert J. Wilson, Robert J. Wilson & Associates, Inc., Burleson, for appellant.

Richard C. Bruse and Harold D. Hammett, Simon & Simon, P.C., Fort Worth, Anne Gardner and Randall E. Betty, Simon, Peebles, Haskell, Gardner & Betty, Fort Worth, for appellees.

## OPINION

McDONALD, Chief Justice.

This is an appeal by plaintiff Barnett from take–nothing judgment in suit for damages against defendants for destroying her dogs, and for libel.

Plaintiff sued defendants Humane Society and Dr. Ruhman, alleging that on May 7, 1978 defendants went onto the premises of plaintiff's Wetobe Kennels; without her consent destroyed 112 of her Weimaraner dogs; that at the same time defendants caused to be published in the Fort Worth Star Telegram an article stating that many of plaintiff's dogs had distemper and mange; that her kennels had not been cleaned for months; that the dogs had been uncared for for several days; that some of the dogs had almost no hair; that the problems had existed for several months; that such statements were false and constituted libel and slander; for all of which plaintiff had been damaged $1,690,000.00.

Defendants by separate answers plead they had come onto the premises where plaintiff had cruelly confined dogs without food, care, medical treatment, and had in effect abandoned [176] animals; that the 112 dogs which were destroyed were in the possession of the Humane Society by virtue of a court order; that the animals were destroyed by humane means; that plaintiff's negligent treatment of her dogs was the cause of the necessary destruction of same; that the utterances to the Fort Worth Star Telegram were true; that Humane Society was the client of Dr. Ruhman.

Trial was to a jury, findings of which are summarized as follows:

1) Failed to find that representatives of the Humane Society went on the premises owned by plaintiff without her consent.

2) Failed to find that representatives of the Humane Society destroyed dogs belonging to plaintiff, without her consent.

3) Failed to find that the destruction of the dogs caused damage to plaintiff.

4) Failed to find that Dr. Ruhman went on premises of plaintiff without her consent.

5) Failed to find that Dr. Ruhman destroyed dogs of plaintiff without her consent.

6) Failed to find that the destruction of dogs caused damage to plaintiff.

7) Failed to find that Humane Society failed to use ordinary care in obtaining permission to destroy the dogs.

10) Failed to find Dr. Ruhman failed to use ordinary care in obtaining permission to destroy the dogs.

13) 14) 15) Plaintiff failed to properly care for her animals; which was negligence; and a proximate cause of the destruction of same.

17) a) market value of the dogs destroyed: 0

b) lost profits boarding business: 0

c) future lost profits boarding business: 0

d) plaintiff's mental anguish: 0

e) plaintiff's future mental anguish: 0

20) Employees of Humane Society intentionally caused to be published information concerning plaintiff.

21) Failed to find such information was false and defamatory.

The trial court rendered judgment on such verdict that plaintiff take nothing.

Plaintiff appeals on 3 points contending there is no evidence to support the answers of the jury.

On May 5, 1978, a complaint about conditions at the Wetobe Kennels was received by Paul Giles of the Humane Society. On May 6, 1978, he went to the kennels where he learned that plaintiff, owner of the kennels, was in the hospital. He found that several friends of plaintiff were attempting to care for 176 emaciated, tick, flea and parasite infected, diseased dogs, some with 100% loss of hair, some not able to walk, crowded into cages, pens and barns in conditions of "unbelievable" filth. Mr. Giles went back to the Humane Society and returned with Dr. Ruhman and Mr. Irwin, director of the Humane Society Animal Shelter. Dr. Ruhman examined the dogs and conditions at the kennels, and based upon his examination and findings recommended that a large number of the animals needed to be destroyed. The next morning, May 7, a warrant for the seizure of the dogs [1] was obtained from Judge Charlene Wallace, J. P. of the precinct in which the kennels were located. Before issuing the warrant Judge Wallace went to the kennels, and the conditions she saw were described by her as "devastating". One hundred twelve dogs were then put to sleep by injection of sodium phenobarbital, an anesthetic. The remaining dogs were then taken to the Humane Society, where some diseased ones were later destroyed. The condition of the dogs in the kennels was terrible; they suffered from mange, some had total loss of hair; they were diseased; infested with parasites; many showed signs of distemper; some were near death from starvation; Dr. Ruhman a veterinarian for 11 years testified the conditions were the worst he had ever seen. Mrs. Childers, a friend of plaintiff, and a witness for plaintiff, testified that about half of the dogs were so diseased that they could never recover. A representative of the Humane Society gave the Fort Worth Star Telegram information concerning the matter which the Star Telegram published as a news story. The evidence is overwhelming that the conditions developed over a period of many months; that plaintiff had far more dogs than she could take care of; that the dogs destroyed had no value; that the story published in the Star Telegram was completely true; that plaintiff's kennel operation and animal boarding operation had shown a net loss every year except one. Plaintiff's kennels were a business that was open to the public. There is nothing in the record to indicate that any person wishing to go on the premises to the kennels, conducted as a public business, had to receive plaintiff's permission to do so. The dogs were in plain view of all persons who visited the kennels.

We think that under the record as a whole plaintiff did not carry her burden of proof; that the published information concerning plaintiff was true and not defamatory; that the evidence is ample to sustain the findings of the jury that plaintiff sustained no damage.

The judgment is correct. Plaintiff's points and contentions are overruled.

AFFIRMED.

1. Void due to noncompliance with requirements of Article 182A VATS.